PETER QUINCY V. THE STATE.

No. 22536. Delivered June 9, 1943.

The opinion states the case.

*J. Y. Gray,* of Tyler, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a two-year sentence in the penitentiary on a charge of burglary.

It is alleged by indictment that Peter Quincy broke into the house of Tobe Daniels with the intent to take from it personal property belonging to Daniels. To this charge, appellant pleads not guilty. As a witness he sayeth not.

As revealed by the State's evidence, Tobe lived in the quiet recesses of a pine forest in the Lee's Spring community in Smith County. In a pen down in the willows along the branch, he and his family had "slopped" their hogs, fed them with careless weeds and persley until the nubbins in the fall were available to fatten them. Killed, cured and locked in the smokehouse, two hundred pounds of hams, shoulders and midlings had survived the winter and were securely in place on March 22, 1941. Late in the night when all of Tobe's house were asleep (according to best recollection and country negro custom), Peter Quincy and his long time friend, Luther Davis, Tyler boys with eyes on some money from that community, secured a taxi to take them to this settlement on a prospect that they could get into a gambling game at a certain house near by. Spurning disappointment, these city slickers were not to be outdone. The game was not on and all was darkness. With a muffled flashlight they repaired to Tobe's home, knocked at the door, peeped in the windows, and finding all well for their mischief, repaired to the opposite end of the smokehouse. Through the cracks (by use of the flashlight) they discovered the hams, shoulders and bacon—no gamble about that. Boards were torn off sufficient for entrance. Peter went in. Luther was loaded and as they left, the smokehouse was stripped of its two hundred pounds and more. They securely hid the loot in a pine top. (For the benefit of the unlearned, this is where a tree has been cut down, the trunk used, and the top left to decay.)

Now, Lee's Spring community had a country constable, too. Early in the morning Tobe reported that he had found tracks around the house, coming to the windows and then to the smokehouse—two sets of them. A hole had been torn away big enough for a man to enter. His meat was gone and he had become suspicious that somebody had stolen it. How the con-

tact was made is not revealed but the constable and deputy sheriff made a plaster of Paris imprint of the shoes of one of the culprits and took a pair from the other and repaired to the scene. They fit the tracks—one set large and the other small. The imprint of holes in the shoe of the one and the metal clip on the heel of the other were clearly visible in the tight sandy soil. The taxi driver told of taking Peter and Luther to the community. Later, Luther returned to the scene without Peter and attempted to locate his meat but it had disappeared. This was verified by a witness. Such disappointment was not calculated to solidify his loyalty to Peter. Consequently he comes into court and tells the story as it is herein written. Why should he mind, for he had been to the penitentiary more than once and from more than one county? One more trip was not so bad. The unfortunate thing for Peter is that the evidence above recounted amply corroborates Luther's story of the theft. It is also unfortunate for him that the record is before us without bills of exception. Apparently the court was considerate of Peter in the trial of his case and gave him no grounds for complaint. They will do this, these trial judges, and they do it often. But the jury! No one, not even this court, has the power to correct their mistakes if and when their right to act appears certain.

The judgment of the trial court is affirmed.